Next case is Rene Johnson v. Workers' Compensation Comm'n 411-0761. Counsel, please. May it please the court. Good afternoon, your honors. Good afternoon, counsel. The defendant has indicated to me that he is withdrawing his argument on causation, so I will only be arguing notice, medical, and respect for medical. He's nodding, so I'll take notice of that. The plaintiff began to notice symptoms in her hands in 1994. However, she did not seek medical treatment until May 26, 2009. It was not until this date that she was diagnosed with carpal tunnel syndrome, and she filled out an incident report on the next day. That was well within the 45-day notice period. The commission found that she did give their acquired notice, but the circuit court reversed. The circuit court found that she did not notify her employer within 45 days of the manifestation date, because the circuit court judge felt that a reasonable person should have been aware of the injury earlier. Now, the judge did not point to a particular date where he said the evidence showed that another date should be the manifestation date. Instead, he pointed to three separate instances. He first pointed to when she began complaining of pain and numbness. He also pointed out to when she began discussing her symptoms with Dr. Watson, and the third instance that he pointed out was when she began to wear wristbands for her pregnancy. Now, if the court cannot point to a date with clarity that it says the manifestation of the evidence shows that this date is the manifestation date, then how can the employee point to a date? How is the employee supposed to fulfill the requirements of notice? So, what do you say? Obviously, there were some issues with regard to her hands. It's undisputed over the years. She then goes to Dr. Watson on May 26, 2009. And then, is it that point that you're saying that was the manifestation date? Yes. Because she finally received some medical opinion that there was an issue? Yes. Because Dr. Watson diagnosed her on that date with carpal tunnel syndrome. So, on that date, a reasonable person would have known that she has carpal tunnel syndrome. No, it's related to her employment. Does it always have to hinge on a medical diagnosis? Not necessarily. In our case, as I say, it's when, like if someone continues to work after their diagnosis and their condition breaks down completely, and the court has said that in a case like that, the notice date would be later. So, it's not always the manifestation date. It could be when their condition breaks down and they can't work. But in this case, the plaintiff worked throughout her treatment. The plaintiff, rather, never took time off of work. Did she have to have any special accommodations or any reassignment of her job duties or anything like that? I don't believe she did. The case law is clear that requiring notice of a potential disability is a useless act. And that's clear from the facts in this case, that if she notified her employer in one of these three instances, that, I mean, basically on the circuit court's decision, I guess she's supposed to notify her employer on all three instances that the circuit court judge cites. I mean, that would create, she would have to file three different claims throughout a 15-year period and notify her employer of all three claims, and that would create just a pile of unnecessary paperwork for the commission. What if she just filed the first one? Well, then what would happen is the defendant would file a motion to dismiss for warrant of prosecution because, you know, she wasn't getting any treatment at that time. She didn't get any treatment until May 26, 2009. So, we're talking about a 15-year period. She didn't get any treatment. So, if she notified her employer and filed a claim in 1994, then the defendants could resist that claim for warrant of prosecution, and then we would end up having to file another claim on May 26, 2009, alleging an aggravation of the condition that was filed on in 1994. So, we'd basically be left with where we are at now. We'd be left in the same place with a claim filed on May 26, 2009 because that's when she first sought treatment. The Duran case is clear that the date on which an employee notices symptoms is not necessarily the manifestation date. Particularly in repetitive trauma cases. Duran was a repetitive trauma case. Yes, that's correct. It might be different where there's one finite, you know, reported injury or problem at work. This is a repetitive trauma case. Yes, this is a repetitive trauma case. I would agree with that assessment, Your Honor, that in a specific accident case, an accident could be pointed to. Like, if she had an accident in 1994, that specific accident could be pointed to. Obviously, she couldn't wait 15 years to seek medical treatment on a specific accident because she couldn't point to that specific accident. But in a repetitive trauma case, since there's no specific accident, the commission has to point to a date when the condition manifests itself, which in Duran, they found that it was the date where she sought treatment and was formally diagnosed. In Duran, the claim that it's suspected she had carpal tunnel syndrome in 1997, but she was not sure because the symptoms were not very severe at that time, and she did not seek treatment until 2000, and she filed for benefits and listed the date of accident as September 8, 2000, which was the date that she was diagnosed. And the present case is very similar to Duran. The plaintiff's complaints were not severe enough to first know that she had carpal tunnel syndrome. Her complaints in 1994 were only tingling. The symptoms increased gradually. She began to experience, she eventually experienced a constant numbness, a pain in her arms, and a fear of dropping limbs. Her symptoms got so severe that she had to have help with lifting patients' limbs and draping patients' limbs. In the present case, it was only after she sought treatment, like in Duran, and was finally diagnosed, like in Duran, that she knew she had carpal tunnel and she filled out an incident report. This case is, it's even more clear than in Duran that she didn't know she had that condition until she sought treatment and was formally diagnosed because there is, in Duran, there's actually testimony by the claimant that she suspected she had carpal tunnel syndrome. In the present case, the plaintiff didn't even testify that she thought she had carpal tunnel syndrome. It is complete speculation by the circuit court judge that she thought she had carpal tunnel syndrome because there's nothing in the record that indicates that she thought she had carpal tunnel syndrome prior to her diagnosis by Dr. Watson. The defendant in its brief mentioned that she complained of her symptoms to her primary care physician. There were no records submitted to evidence by the defendant on this. This is just based on her testimony. She's mentioned that she complained to her primary care physician, but her primary care physician did not diagnose her. He did not offer any treatment. I mean, this is not an expert in hand conditions. I mean, when people go for their annual physical and they make a complaint about all sorts of symptoms, it doesn't mean they're seeking treatment for those symptoms. It doesn't mean that they're getting a diagnosis and there are no medical records to indicate that she ever received a diagnosis of carpal tunnel syndrome prior to the May 26, 2009 date. The circuit court uses the fact that as one of the instances which it believes the incident could have manifested itself is when the plaintiff was prescribed risplins by her gynecologist for her pregnancy, but just because she wore risplins does not mean that she had carpal tunnel syndrome. Risplins are also evidence that after her pregnancy was over, that period of numbness improved, but that's just a quick word. Well, the testimony was that when she was pregnant she wore the risplins constantly. After she had her child, she wore the risplins less often. I believe she still wore the risplins occasionally, but not constantly when she was pregnant. Your position is pretty clear. You're saying there was some tingling, there was some numbness, it waxed and waned, she was pregnant, she was working, there was no restrictions, there was no reassignment, it's getting worse, she goes to see Watson on May 26th, he diagnoses the condition, and that's the manifestation date the next day notice is given. Yes, that's correct. That's your argument, right? Yes, that's correct, Your Honor. So the problem I have is when we get a diagnosis from a medical doctor about a specific condition. Yes, I believe that is what the Durand case states. And the facts in this case are very similar to Durand. But you conceded, and I'm sure Mr. Elwood's going to argue the contrary, it doesn't have to, under the case law, hinge on a formal diagnosis because that would lead to extremes on the other side. Well, yes, I agree. You could have a total breakdown but I would agree, Your Honor, that there are situations where the manifestation date would not necessarily be the date it's formally diagnosed. Like I mentioned before, the situation where someone seeks diagnosis but they continue to work and their condition breaks down to the point where they can't even work anymore, then the court would look at that date where their condition got so bad that they can't work anymore. Is that really fair to the employer? Well, I mean, you have to consider the fact that the employer in this case had the benefit of... No, no, your example. Go back to your example. It seems to be we have cases that say that, that an employee was given a medical diagnosis of carpal tunnel but they work for another year and don't have a complete diagnosis of carpal tunnel for weeks and days and months and perhaps years following the diagnosis of the medical condition and linked to repetitive trauma. Well, in that case, I think the employer is actually getting a benefit because the workers continue to work for them. Well, really, is that the case because isn't it possible that the employer might have some light duty to make it easier to correct the condition perhaps before it results in a complete breakdown? Well, I would agree in some cases that would be the case. And in that instance, isn't it kind of unfair to the employer that it corrected the situation and made it less worse and the employee would have benefited from that? Well, I mean, that would be great accepting the claim because there hasn't been any notice given of the medical diagnosis. It was way back there, a year back. Well, I mean, the act is to be liberally construed in favor of employees. I mean, in that case, you have to consider should the employee be punished for continuing to work even though in that case I think the employer gets the benefit of their continued employment and I think it would be it would be unfair of the employee to have to notify to be punished for being a dedicated worker and continuing to work. In the present case, the petitioner did continue to work throughout her I mean, she's been working for the employer for 20 years and she was a dedicated employee. I don't think she should be punished for continuing to work despite having tingling in 1994. And that's the rationale of Oscar Mayer and Durant, right? Yes, that's correct, Your Honor. That was my question. I just didn't know as a matter of policy if it's good policy. Well, I would agree. I mean, I think it is good policy to work until the horse dies. I don't think it's good for an employee to work until the employee dies but I think it's good policy that they can still file a claim if they do continue to work until they suffer that injury. Because you have to consider most employees aren't that sophisticated. They don't understand the workers' compound. They don't understand where repetitive trauma injury is. So, you know, some workers even though it's not in their best interest they may continue to work but as a team, they shouldn't be penalized, right? Yes, I would agree with that, Your Honor. The circuit court also mentions... Yeah, but if you get your carpal tunnel taken care of can't you go back to work? If you get your carpal tunnel fixed? Yeah. I would agree with that but unfortunately in this case the employer did not accept the claim so I didn't hear where you are now. I mean, even if she reported the injury in 1994 it was not severe enough at that point to have the surgery first of all and second of all there's nothing to prevent the employer from disputing the claim back in 1994 and, you know, again if she reported the injury in 1994... We're dealing with a hospital here that's supposed to be concerned about health. I'm sorry? We're dealing with a hospital here. We're not dealing with I mean, you know... I'm not understanding your question. Well, I would think this type of employer would be less likely to reject, wouldn't it? Well, I mean, they are. They did appeal the commission's decision in this case. The commission found for the plaintiff and the employer appealed the decision so, I mean, obviously they're not in a hurry to get her surgery so... I see that I am out of time and I briefly conclude. Okay. All right. Thank you. Counsel, please. Thank you. Brad Elward on behalf of St. John's. There are two points that were raised by my opponent partially today in his discussion with the court and partially in his brief that I wanted to get to before I really talk about why this should have been cleared to this lady that she had carpal tunnel syndrome and that it was related to her employment. First of all, he makes a point in his brief that there was a failure of the circuit court and he questions how we can have a discussion on notice when there really isn't a per se statement that there's no accident. But I think when we look at the language of the circuit court's finding and the same thing when we look at the dissent of the commission, I don't think there's any question whatsoever when the court says, the circuit court says, repetitive trauma manifests itself on the date and then it gives a standard. It's clearly talking about manifestation and I say this is important because if you're looking at that 45-day window and the circuit court is saying we don't think there's proper notice, the only logical conclusion that you can make is that the manifestation date took place prior to the date that the commission found. So I think that's implicit in this finding. It isn't clearly articulated. That's the second point that my opponent makes that there's no specific finding of a manifestation date that was incorrect. I think what we have to do here... Well, wait a minute. The commission fixed the manifestation date at the date of diagnosis? Yes. So where did the circuit court fix it at? The circuit court did not make a specific finding. Well, I think it's your opponent's position. If the circuit judge can't even figure out what the manifestation date is, how can he suggest that the commission's fixing the manifestation date when I think we're looking at it from two different perspectives. First, from the circuit court's perspective, it doesn't have to specifically state a date. All it has to do is look at the testimony that Dr. Watson gave and say that this petitioner had been complaining of this problem for over two years in the course of him seeing her in the hospital. When they're walking through the hallway she's saying, my hands are hurting, I've got something terribly wrong with my hands, I need to do something. Finally, after hearing this for two years, he says, I can't treat you in the hallway. You've got to make an appointment and come see me in a clinical setting. So that testimony alone shows that whatever the manifestation date, it was clearly prior to the date that the commission found. And if we take that 45 days... Aren't there two components to this? You have to have a fact of an injury, but then you have to have a causal relationship of the injury to the employment. It's plainly apparent to a reasonable person. Right. And I think if we break that down into the fact of injury, I don't think that there's any question in this record based on her testimony, Dr. Watson's testimony, and his records, that she had carpal tunnel syndrome dating back to 1994. Her hands hurt? Yes. That's a fact of injury. But where's the nexus that a reasonable person would be able to establish? If we assume the fact of injury, we thought, okay, she's got carpal tunnel syndrome. No, no, no. My hands hurt. Her hands hurt. Not carpal tunnel. My hands hurt. She doesn't know she has carpal tunnel until the doctor tells her it's carpal tunnel. She knows her hands hurt. So we'll accept for a matter of fact that she knew for a long time and that's the overwhelming evidence that answers that question for you is to take a look at this individual. She's not a factory line worker who has a high school education. She's a RN. She's a surgical orthopedic nurse. Commissioner Newell. What difference does that make if the definition is an objective standard with a reasonable person standard? I think it has to be factored in otherwise it makes no sense. Does it have to say a reasonable nurse because she's a nurse here? I think you do need to correct me. Remember with Ted Kiyonka and all those classes in law school talking about the objective standard and the subjective standard? Absolutely, but I'm fully aware of that. But I think this is where talking about this case with somebody and telling them about this case and they say, wait a minute, this person's a RN. Okay, what you're saying in effect to summarize is context matters. You're arguing that the context of medical training working in a hospital would be different than the context of someone who's in a warehouse packaging products. Absolutely. How is that a reasonable person standard? On the record, it is a warehouse packager standard. Wait a minute, wait a minute. The rule is if a reasonable person knows or should know that number one, they have an injury, and number two, it's caused by employment, we've got manifestation. But what if a person actually knows they're injured, actually knows it was caused by their employment, but a reasonable person wouldn't have done it? Have we got manifestation? Of course we do. So it's not a reasonable person standard necessarily. It's a reasonable person standard in the absence of actual knowledge. And I think that actual knowledge can be inferred from the fact that her career, I don't think that anyone looking at this can draw that conclusion. Is there any evidence in the record, was there any point in time where she said this is from my work? No, she doesn't. So there's no evidence of actual knowledge? No, she never said that. So now we're back to where a reasonable person know or should know, and Duran says, you know, when you're told by a doctor, I guess that's manifestation these days. Okay, if we back up to the reasonable person standard throughout the fact that she's an RN, she's got complaints of risk problems, tingling, numbness, inner risk, dating back to 1994, over 15 years. She makes comments to her first doctor, his name escapes me, Dr. Drake, I want to say. She says, I told him about all my symptoms. Several years later, she's at her gynecologist. She tells that doctor about her symptoms. She ends up with splints. I don't know of many other things that have a person end up with splints other than carpal or cubital tunnel syndrome. That happens in 2000. We follow that along. She continues to work. She reports that in 2004 she changes the type of typing and input that she does in her job. Mr. Oliver testified that to tie the time in. Dr. Watson's report shows that she experienced an increase in symptoms when she changed the recording methodology to data entry in her job. That dates back to 2004. She's aware there that what she's doing at work is causing her symptoms to spike. If we look at a reasonable person and we look at this trial, I can't see how any reasonable person in a 15-year period could come to the conclusion other than one, I've got carpal tunnel, and two, it's caused by what I'm doing at work. What about Oscar Meyer? Oscar Meyer says an employee discovers the onset of symptoms in their relationship to employment, may be able to work faithfully for a number of years without significant medical complications or lost working time, or may never degenerate to the point at which his condition impairs his ability to perform the duties to which he is assigned since it's not until the employee actually becomes disabled that the employer is adversely affected. I mean, that's what we've got here. You're accurate on the cases. I don't think that applies here because I don't think she has ever reached the point where she's, the compensator said she hasn't reached the point where it's altered her work duties. He mentioned one thing. Does she need surgery though now? I think she needs surgery now. That doesn't mean she's disabled from performing her work. She's disabled from performing her functional pupil tunnel and the doctor wants to release those. And I think that's important here. When we look at Dr. Watson's testimony, his testimony, she explained to me that she had the problem for many years. I'm sorry to interrupt you, but let's go back to what you were just saying. I mean, wasn't the testimony that it got progressively worse, she had trouble holding things up, she became concerned that she couldn't keep doing her job and so on and so forth. I mean, isn't that a disability? That's an impairment. I don't know if I'd call it a disability. But going back to your point, we'll never know. It's speculative as to whether if she would have reported something in 2004 if that would have provoked surgery at that time. I don't know. But we do have a history of at least two years prior to her actual diagnosis where she's telling her treating, who becomes a treating physician, she's got something terribly wrong with her hands, but two years before she goes and sees this doctor. But you have to still have the second prong of the connection of something terribly wrong with my hands and my work. Right. And again, if you want to limit it to a reasonable person and not consider at all the nursing, I'm not sure that makes a lot of sense, but if we're forced to do that, you know, one last thing I'd like to add, if you take the 45 days, the notice provision, you back it off of the date that she was diagnosed, May 26, I believe it was a doctor's appointment, that puts us back to April 9. And at that point, any manifestation date prior to that, she hasn't given proper notice. So April 9, 2009 is your trigger date. And when we look at Dr. Watson's testimony, and you look at my argument, as a reasonable person, I think what she should have known as an RN nurse who was an orthopedic surgery nurse, I don't think there's any question that she had a manifestation and knowledge of the connection prior to the time she gave notice. And so that's why we fought this appeal. We think the notice issue is a significant issue, and we'd ask you to take a close look at it. Your opposing counsel at the beginning of his argument said that you were withdrawing your argument on causation. That's correct. We were withdrawing that. Make sure we're all on the same page. Absolutely. Vote, please. Now, the employer mentioned, the employer's attorney mentioned that the manifestation date is not critical, it's not critical that the circuit court can decide what the manifestation date is, but how can a claimant ever say that the circuit court can't decide what the manifestation date is? There has to be a clear manifestation date in order for her to give the 45-day notice, and the circuit court... Wait a minute. I think you got the cart before the horse. The commission determined what the manifestation date was. That's correct, Your Honor. And the circuit court found it was against the manifest weight of the evidence but couldn't identify a manifestation date. That can't be. That is correct. Obviously wrong. You've got to be able to say what was right. And if you can't say what was right, you can't say the other guy's wrong. I mean, it's just that simple. Well, yes, I believe the commission was right in finding the manifestation date was May 26, 2009. And the reason... And that was based on the law. I mean, that's... the Durand case says that manifestation date can be when the condition is diagnosed. And the commission was correct in that. It notified her employer one day after that date. One day after May 26, 2009. And, you know, the claimant followed all the proper procedures. And she should not be punished because the circuit court says that the manifest weight of the evidence says that it should be one of three other possible instances. I mean, how can any claimant ever satisfy such a burden? The employer mentioned that Dr. Watson testified that she's been complaining for two years. Again, Dr. Watson did not diagnose her. Dr. Watson testified that he told her to come to her office. I can't treat you like... This was in the context of two co-workers talking. Dr. Watson said, you know, he can't treat her just as talking to her as a co-worker. She has to come in. And it was only when she came into his office that he formally diagnosed her when she was his patient. The defendant mentioned that she is a nurse and claims that that creates a different standard. But the Nurse Practice Act states that a nurse... Nursing care is limited to nursing diagnosis and the administration of treatments as prescribed by a physician. The practice of nurses shall not be deemed to include those acts of medical diagnosis or prescription of therapeutic or corrective measures. A nurse cannot diagnose carpal tunnel syndrome. There's no indication that she is an expert in carpal tunnel syndrome or that she knows anything about the treatment of carpal tunnel syndrome. So I don't see how she can diagnose herself. And there's no evidence of that. It was just pure speculation that she knew that she had the condition. Would it make a difference if she was a surgical nurse or a surgeon who did nothing but releases? I mean, according to the Nurse Practice Act, a nurse can't diagnose. So I would think that it would not make a difference based on the part of the act that I cited in our brief. So I would have to say no. It would still be a reasonable person standard based on the current law. The employer also mentioned that splints can only be used for carpal tunnel syndrome. Now, as attorneys, maybe that's all we see splints being used for because we handle carpal tunnel cases. They can be used for gout, tendinitis, sprains. And in the petitioner's case, she was prescribed splints for pregnancy. She wasn't prescribed splints for carpal tunnel syndrome. She was prescribed splints for her pregnancy. So why would she know that the splints were used for, well, why would she know just because she's wearing splints that she has carpal tunnel syndrome? She could have had some other risk condition that she didn't know about. And she did not know that she had carpal tunnel syndrome. There's no evidence of that. So I would request that this court reverse the circuit court's finding on notice and reinstate the commission's decision on notice and reinstate the commission's award on medical and prospective medical. Thank you, Your Honors. Of course, we'll take the matter under advisement for this petition.